May it please the Court, Nathan Speed on behalf of the appellate SNAP. The Board correctly found that You Map's originally issued claims were unpatentable as obvious in light of the prior art, including the Fellman reference. Where the Board erred was in granting You Map's motion to amend its claims. There are two errors with the Board's decision. First, the amended claims improperly introduced new subject matter that You Map's original disclosure did not support. Second, even if supported, the amended claims would have been obvious over Fellman and or the additional prior art that we cited during the earlier proceedings. Given how the briefing has unfolded, I'd like to start with the new matter issue because I think it might be simpler and straightforward. On that issue, the limitation that we're dealing with is the combined ranking limitation. In a sense, what we have here is you have a system that's looking for a social media post to provide a user. The combined ranking limitation requires that you have this initial set of posts. You apply a first customized score against it to get a first ranking. Then you take that same set of posts and you apply a second customized score against it to get a second ranking. You take those two rankings and you get a combined ranking. The problem is You Map's original disclosure doesn't provide any support for the notion of a combined ranking whatsoever. As an initial matter, the Board erred by even considering the substance of You Map's motion because it was procedurally flawed. Under the Board's rules, You Map had a burden to demonstrate in a motion where there was original support for its claims. That's a burden of persuasion and preponderance of the evidence. In filing a motion, they took on the affirmative obligation to comply with the Board's rules which included providing a detailed explanation of any evidence that they cited. For the combined ranking limitation, all they did was provide a string cite of evidence to the Board with no explanation. It's over 30 paragraphs of just citations to the original. The Board looked at that. They're the keeper of their rules and they found that there was adequate support here. We review that for abuse of discretion, right? Correct. The Board has discretion. On this, the rule is a mandatory rule. A party moving must provide a detailed explanation of the evidence supporting their motion. This is the only case that we know of. We've said this in the opening brief and we've had no response from You Map. The only case we know of where the Board has permitted a party to use a string of citations to show original support, they have routinely denied motions on that basis. Fundamentally, we don't need to win on the procedure because I think the substance is strong for us as well. On the substance, the Board, because they were given no explanation by You Map, had to go through all that evidence and try to come up with a theory of their own as to how there was support for this combined ranking limitation. What the Board did is they found certain disclosures related to this mapping functionality in the patent. What the mapping functionality does is allows the user to specify that they want to rank posts that relate to a certain topic. Bars is one of the examples. If I want to look at all the bars within 10 miles of the Federal Circuit's courthouse, the system would limit the initial set of posts to ones related to bars and then a customized score would be applied against it, such as my interest or what have you, and I get a ranking of all the bars in the area. The Board pointed to that and it said at page 50, and this is the critical finding that the Board reached, it said that the system creates more than one customized score when the posts are ranked for different maps. So it's saying, in effect, the user could say I want to rank posts related to bars and then I want to rank posts related to the Japanese culture as the other example of the specification provides. All that's doing is having one set of customized scores and rankings provided to one set of posts and then another customized score and set of rankings provided to a second set of posts. There is no disclosure of taking one set of posts, such as the bars, ranking it once, ranking it twice, and then coming up with a combined ranking that decides what you're going to show to me. They don't even use the word combined in their decision. There's this idea that there's some combined ranking limitation. UMAP's opposition brief, where you would expect that they would tell us how, because given this is a substantial evidence question, you would think that they would be able to come in and say how there's a reasonable interpretation of what the Board cited that would support this combined limitation. They only use the word combined once in their brief and it's when they're quoting paragraph 137 of the provisional application. That provisional application at that paragraph is just saying that you can take various user preferences, such as my age, who are my friends, things like that, combine those preferences to get a single customized score. You don't have to take my word for it. That's what the Board said at page 50 when it cited to paragraph 137. That was their interpretation. You really are asking us to redetermine the facts, which is a hard sell. You do have one argument I'd like you to address, which does seem to present a legal question, and that is the Board's ruling on the obviousness over Felder, whether it would have been obvious to have a request to the server to provide a Zoom setting. The Board rejected that at the time. They seemed to say, well, you wouldn't substitute the Zoom function for the Radius function because they do the same thing, which perhaps on the face of it is not consistent with KSR. I would agree with Your Honor, and I'll shift to that issue. The Board essentially put us to catch 22. Our primary argument below was that Feldman's Radius is a current Zoom level. Just briefly on what Feldman discussed. That's again a fact question. There's an interpretation of Feldman. They say Feldman doesn't show a Zoom level request. That's an interpretation of Feldman. It's hard to overcome the Board's fact finding in that respect. I'm more interested in the question of whether it's obvious over Feldman since the prior art showed requests for Zoom functions. We introduced below overwhelming evidence that it would have been a routine design choice for a person of skill in the art to just use the Zoom level, either as an augmentation to the Radius that was already in Feldman's request, or to simply substitute it. There's the Badger reference that we introduced. That's a reference. I don't think the Board has really disagreed with you. Right. What they did was on the interpretation of Feldman, they said that Feldman's Radius, which we had argued was a current Zoom level, but they said that that Radius isn't a current Zoom level, but it accounts for the Zoom level. We would have thought that that meant that the Radius is a Zoom level, provides the same level of information to the system, which is the scale of the map, which is why we argued that the Radius was a Zoom level. But if you accept that it wasn't, then what we did is we demonstrated to the Board that it was routine in this art to use what is explicitly called a Zoom level in a request to provide benefits to the system, which is what area of the map is the user looking at and how much detail do you want to provide the user. We identified that in our opposition to the motion to amend, and we butchered it with expert testimony. Can you show me where you clearly argued that it would be a simple substitution? That is, if we accept the Board's finding that Zoom level is not the same thing as Radius, that would be a simple substitution to replace Feldman's Radius with the Zoom level of the plan. So appendix 2054, 2054, we don't use the word substitution, Your Honor. I'll let you know that right off the bat. But what we do talk about is it's a predictable design choice. My mind, a substitution versus a design choice, it's two sides of the same coin. Well, it seems like the Board wasn't sure if you were making a simple substitution argument. Isn't that correct, that they were unclear on whether that's what you were arguing? They expressed confusion, and I think that that was based on this catch-22. At the time we were making our argument on Obvious in light of the prior art, we said, this argument is an alternative argument, and it's only relevant if you assume that the Radius is not a Zoom level, because we still, today, believe that, in Feldman at least, the Radius is the Zoom level. In that alternative world, where there is a delta between the Radius and the Zoom level, then there's two reasons you would have done it. You would have included it because of the Zoom level, that is. You would include it because it provides the benefits that the prior art ascribes to it, which is it identifies the area and the detail. That's a motivation to include it in addition to the Radius. And then, in this world that the Board adopted in its final written decision, where the Board effectively said, the Radius is the Zoom level, but it's not a Zoom level in the terms of the claim, and therefore, it's redundant to include Zoom level if you already have a Radius. That's when it's a design choice to just use that instead of using the... Did you cite KSR to the Board in your opposition? Yeah, at 2054, where we cited to KSR. Exactly. So, I'm already at the page. We cited to KSR, and that was supporting the initial argument that the prior art provided benefits and identified benefits that would have motivated using the Zoom level, which is the identifying where on the map you should go and how much detail to provide. What is our standard of review for the Board's determination that they were confused about whether you were making a simple substitution argument, and they thought some of what you were arguing was conclusory? How do we review that? Whether or not our expert testimony was conclusory, I think that would be a substantial evidence question because it's facts, and I don't jerk away from that standard because this is not conclusory expert testimony. Our expert at 2367 to 2373 walked through several prior art references that all established what's conventional in this art, which is that you use Zoom information as part of a request for map-based information. On A57, the Board recognized that the petitioner asserts that including the Zoom level would have been a predictable design choice, etc., etc., and then the answer to that is, but Feldman already achieves this by sending the perimeter 303 in the request, but that seems to say that it's not a predictable design choice because it achieves the same result. And I would argue that under KSR, that's the reason it's a predictable design choice because it does the same thing. Feldman's system is somewhat unique because it uses the radius both to change the search area and the Zoom, but what was conventional at that time and would have been obvious to a person still in the art looking at Feldman is to use the more conventional way, which was just to use the Zoom level, whatever that is, itself. I identified six different references that said that. We walked through in detail, our expert walked through in detail on that. I don't know how that could be conclusory even under substantial evidence. I guess I'm confused, too. On 58, the Board says, in sum, petitioner has not provided a sufficient articulated reasoning supported by rational underpinnings, while one of ordinary skill in the art would have modified Feldman with any of the cited references, citing KSR. What do I do with that, and don't I have a pretty deferential standard of review of that conclusion? It is deferential, but it's not a rubber stamp. I still would submit that you need to look at the evidence we cited. We identified prior references. This isn't a case of missing limitation where you have an expert saying it would be obvious to add the limitation. The limitation is known. There's no dispute that it was known to use a Zoom level in a request for information, and there's never been a dispute that a person still in the art could do that. So it was a simple design choice to, rather than use the radius, to use the Zoom because, as our expert explained, the prior art references demonstrate that it allows for a user to conveniently identify this area on the map that's being searched and the level of detail. Even under a substantial evidence review, that should be enough under KSR's flexible approach to obviousness to reverse the Board's determination. With that, I'd like to reserve my remaining time, if possible. Okay. Mr. Catalina? Good morning. May it please the Court, Richard Catalina on behalf of Apelli UMAP, Inc. So you've heard our discussion about this question of obviousness over Feldman and whether the Board's reasoning is consistent with KSR. So there seems to be a problem here, because they say it's not a simple design choice because the two things, that is, radius and Zoom, achieve the same result, but that's not consistent with KSR, is it? It is consistent with KSR, but there is a fundamental difference between the radius and the Zoom perspective view of Feldman. The radius defines the… Well, if they're the same thing, it's a simple substitution. They may not have used the words, but they talk about design choice and they cite KSR. If it's the same thing, then KSR says that's obvious, right? It's a simple design choice. Correct, Your Honor, but it is… Maybe I misspoke. It is not… In this case, the radius and the Zoom perspective view are not the same thing. They are two different features of Feldman. Well, they're different features, but they achieve the same result, right? They do not. In what way don't they achieve the same result? The radius defines the search area. If a user of Feldman sets a radius, let's say at one mile, and it shows up on the map of Feldman, it's a radius of one mile, and then the perimeter about that radius that extends from the center point, the geolocation, that perimeter defines a search area, which Feldman demonstrates in its figures as a circle. Zoom, on the other hand, is something totally different. The Zoom, by using the Zoom function, a user is able to show what is displayed on the map. So a user can use the Zoom function initially to set a radius, and it may use other means to set the radius. So you can set a radius. The Zoom function sets a radius. It may set the radius, but it's not the same as the radius. Because once the radius is set, it achieves the same result, right? I mean, I didn't think there was much dispute about that. It does not achieve the same result because the search area is defined by the radius. The Zoom can always be adjusted, and the radius and the search area remains the same. Let me, if I may, Judge Knight. The problem is with what the board says on A57. They recognize this design choice argument, and then they say, but Feldman already achieves this by sending the perimeter in the request, which is basically saying it achieves the same result. Therefore, it's not a simple design choice, which seems on the face of it to be directly inconsistent with KSR. But the board says that, but in... Well, that's wrong, right? Well, that is wrong because the Zoom perspective view is defined by... The theory that it's not a design choice because it achieves the same result is wrong under KSR, right? Correct. Yeah, okay. So that's the problem you've got. But still, the Zoom perspective view is different than the radius, which defines the search area. The fact that the Zoom perspective view may be used in some instances to initially indicate a radius, and thereafter, the Zoom may be modified or the radius modified by using other means, doesn't mean that the Zoom perspective view, however that is encompassed in whatever data, is sent in the request. They're different functions performing... They're different elements performing different functions. And if I may, Judge, to help maybe explain this and put this in a different perspective, the 727 patent, UMAP's patent, the reason why a current Zoom level is submitted with the request is because the current Zoom level defines the search area. Feldman, on the other hand, the search area is defined by the radius that defines the perimeter. So, if they're two completely different things, and I point to the 727 patent in figures three, and the board understood that, that the search area in the 727 patent is based on screen attribute information, of which a perspective or a Zoom level is an element. Now... Can we come back to KSR, because I'm definitely confused now. Okay. The board found that the Zoom level and the radius are different things. Correct. I think it may even have been conceded, possibly by SNAP below, that they are different things. But it sounds like you just conceded that the board made a finding or a conclusion of law that's inconsistent with KSR. So, if that's the case, why don't you have a problem here? Well, what the board held is that there is a relation between the Zoom perspective view and the radius. The board never says that they're the same thing, or that one may be replaced in lieu of the other. In fact, the board says that the Zoom perspective view does not achieve, would not achieve, what the radius does, because it is something different. It's just a feature or function that may be used initially to establish what that radius may be for the search area. Did SNAP adequately argue that, in the alternative, this is a KSR case, where it's a simple design choice, a simple substitution, essentially, if you don't buy that Feldman's radius is the Zoom level of your patent, then it would be a simple design choice, simple substitution. Did they argue that? And if so, what did the board say about it? Well, they still, to answer your question, Judge Stark, SNAP would have to show that there is a motivation. Did they argue it? No. They did not argue design choice under KSR? They made an argument that it would have been conventional on the appeal. That was never argued before the board below. They argued that it would be obvious to modify Feldman to include. Oh, wait. The board itself says petitioner asserts that including the Zoom level would have been a predictable design choice. The board says they argued it. Okay. Good. They did make that argument, but what they did not show was the motivation to combine the other references to modify Feldman, Your Honor. But did the board have any reason for why they failed to show motivation other than saying the radius of Feldman already does it? Can you repeat the question, Judge? Sure. It's one reading of the board seems to be that the only failing they found in SNAP's effort to show motivation to combine is that the board found that Feldman's radius already does the Zoom level, so no one would be motivated to replace Feldman's radius with a Zoom level because it's already accomplished. Is that what the board said? And isn't that error if they did? I don't read that in the board's decision, Your Honor. I don't read that the board said that the radius accomplishes the same thing as a Zoom level. Would that be an error if that was their reasoning? I don't see it as being an error, Your Honor. Why isn't that an error under KSR? If the factual finding that supports the board's decision that there's a lack of motivation to combine is a legally impermissible factual finding under KSR, then there's both an error of law and there's a lack of substantial evidence because that factual finding is null and void if it's not a legally permissible one under KSR, and you're left with nothing else on lack of motivation to combine. Why isn't that the correct way to look at this, assuming that that's what's  Again, I go back to Your Honor that what SNAP failed to do was to provide the motivation other than the convenience. But that's not, you're trying to go back and not really answer the hypothetical. Let's assume they did make a motivation to combine argument that rested on the notion that this was a conventional choice. That these two things were interchangeable. And the board, rejecting that, said that actually you would never do that because it does the same thing. And that factual determination is not one that KSR allows anymore. So the board has not made any relevant legal finding that's supported by law on motivation to combine. Doesn't that at least mean the case needs to be vacated or remanded? I would say no, Your Honor. I would say that there was substantial evidence to support the board's findings. What is that substantial evidence? The substantial evidence was that, and I apologize, maybe I'm not answering your question directly, but I still go back to the motivational aspect. Where SNAP's expert says that it was just merely convenient. Would have been convenient to combine. As to the conventional. That can be a motivation to combine, right? That it's convenient? Isn't that often? It's design choice. Design choice is often a motivation to combine. But following that though, other than to say it's a conclusory statement that it's convenient, what are the factual underpinnings? That's their job, to opine on why you would do it. I don't think it's conclusory when you look at this and say they do the same thing. It would be merely a design choice. Conclusory is just there would be a motivation to combine without an explanation. Well, the board in this case was seeking more to explain exactly why it would be convenient other than to just say it would be convenient. The other problem with Feldman, Your Honor, is that SNAP argues that Feldman itself provides the motivation to either replace or modify itself with other references. The problem with that is that Feldman's radius defines the search area. And Feldman also discusses or discloses a zoom perspective view. If Feldman provides the motivation, as argued by SNAP, and Feldman also discloses a zoom perspective view, then why would not have Feldman included a zoom perspective view in the request? I know these are amended claims, but were the original claims being asserted in litigation anywhere? Yes. What's the stage of that? The litigation has been stayed in light of the IPR that was filed. Were there any motions yet? There were initial motions on the pleadings. Has anybody challenged them as ineligible? No. Is there any additional questions on this point, Your Honor? Hearing none, thank you.  At this point, I will rest on the balance of our brief that's been filed. Okay. Thank you. Mr. Speed, you have a couple minutes. Thank you, Your Honor. Just briefly, just... Why didn't you challenge these amended claims as ineligible? The amended claims have not yet issued, so... No, but in the IPR, I mean, that's a basis for arguing that the amendment shouldn't be granted because they're ineligible. We've affirmed that several times. Why didn't you make that challenge? These seem like typical GUI claims that we've found ineligible over and over again. I agree with everything you just said. I don't know why we did not challenge them below. But we did challenge them as obvious, given the priority that we had. On the question of did we raise the design choice, I just wanted to highlight a few additional parts of the appendix just to make sure we're on the same page. Appendix 2373, that's paragraph 88 of our expert. He explicitly, having gone through all the references that he had there, said essentially, as I've discussed above, it was conventional or routine to do this, and therefore it would have been a predictable design choice to do so. In our reply to the... in opposing the motion to amend, we explained in detail at appendix 2630 to 2631 that given all the prior art that was in the record, it would be a known predictable technique and common design choice that was used in prior art systems. We then cited to our opposition, put in a parenthetical that said citing KSR. We certainly put it on the table that if the board was right that the radius and the zoom level are essentially the same, then just switching one or the other would have been obvious to a person still in the art at this time. Unless there's any questions, I yield the remainder by 30 seconds. Okay, thank you. Thank you all for the counsel.